[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, Linda J. Ariail, commenced this action for a dissolution of marriage by complaint returnable May 11, 1993. She alleges that the marriage of the parties has broken down irretrievably and seeks alimony, a property settlement, and other relief. The defendant husband, Albert H. Ariail, admitted in his answer that the marriage has broken down irretrievably, and affirmatively alleged that ground in his cross-complaint. He also seeks a dissolution of the marriage, a reasonable property settlement, and other relief. Both parties were represented by counsel throughout the proceedings, including trial.
At the hearing, the parties testified and filed financial affidavits. The court was also asked to, and did, take judicial notice of a pending foreclosure action against the parties' jointly-owned home.
From the evidence, the court makes the following findings.
The plaintiff, whose birth name was Linda J. Pillar, married the defendant on January 27, 1979, in Lebanon, Connecticut. She has resided continuously in this state for at least one year before April 7, 1993, the date of the complaint. All statutory stays have expired and the court has jurisdiction. The parties have no minor children, issue of the marriage and none were born to the plaintiff since the date of the marriage. Neither party is a recipient of public assistance.
The plaintiff is 40 years of age and a college graduate with a degree in biology. She has also taken academic CT Page 1865 nursing courses, but did not obtain a nursing degree.
The defendant is 39 years of age and a high school graduate with two years of college. He left without receiving a degree. His physical health is good, but he has suffered from psychological problems of long duration for which he is prescribed daily medication. His condition, he claims, has caused him to miss one or two days of work per month, on average, but he also admits he has not taken his medication on a daily basis, as prescribed. Other than his periodic absences, his condition does not appear to affect his job performance.
Both parties are intelligent and did extremely well academically.
This marriage of over 15 years was troubled from the start, largely due to the defendant's rages, which involved acts of violence directed toward the plaintiff and inanimate things. The defendant does not deny these episodes but claimed no recollection of them.
The parties separated a number of times, finally about August 1991. The plaintiff continues to reside in the family home. The defendant left the home to pursue a job in a different part of the state and came home on weekends; his homecomings became less and less frequent. He now resides in a rented apartment with a live-in companion. He appears to support her by paying all of the expenses of his household.
The court finds the plaintiff's testimony in regard to the causes of the breakdown of the marriage credible and concludes that a greater share of the responsibility for the breakdown must rest on the defendant's shoulders.
The defendant has been employed virtually throughout the marriage as a computer technician, repairing computer hardware, first for Mobil Chemical then Storage Technology, then Intergraph until May 1993 when he was laid off. He now works as a computer programmer for an employer who has a contract with the State of Connecticut, and earns a gross of $871[1] per week, with a net of $605 per week, with no benefits. He has specialized skills.
The plaintiff has been employed full time for about CT Page 1866 half the duration of the marriage, first, for Mobil Chemical, when she had to leave due to a company rule prohibiting spouses from working in the same department. She then worked for Pratt Whitney for about three or four years. After a period of part-time and sporadic employment as a substitute teacher, caring for family members and such, she began working as an assignment specialist for Electric Boat in 1989, her present employer. She earns $568 per week gross with $403 net per week; when her voluntary deductions for `FERS' and `TSP' shown on her financial affidavit are added back, her true net is $436 per week.[2]
Both parties fear the loss of their present jobs in the future. The plaintiff, because of the pessimistic outlook for the defense industry of which her employer is a part, and her lack of seniority; the defendant, because of the expiration date of his employer's contract with the state.
The court concludes from the evidence that the parties have approximately equal employability, but the defendant has greater, and more marketable vocational skills than the plaintiff. He also has higher present earnings, and earned considerably more than she did throughout the marriage. The court cannot determine whether, considering his health condition, either party has a greater opportunity than the other to acquire capital assets and income in the future.
The parties' assets consist of their jointly-owned home, 130 Brewster Road, Jewett City (Griswold), Connecticut, with a negative equity of $23000. Each has a deferred compensation/retirement plan benefit. The plaintiff's, valued at $4919; the defendant's valued at $9000.[3]
The parties purchased the home in 1989 for $130000 with the proceeds of the sale of their jointly-owned condominium unit and a mortgage of $105000. During one separation of about six months, the plaintiff moved out of the family home and the defendant paid the mortgage payments and other household expenses with minimal financial assistance from the plaintiff. Then, after the plaintiff moved back in, the defendant moved out, and the plaintiff made the payments from the fall of 1991 to January or February, 1993, with no assistance from the defendant. She has continued to reside in the premises since February, 1993 and has made no mortgage payments, resulting in the foreclosure action now pending. The CT Page 1867 defendant refused or failed to cooperate with the plaintiff to refinance the home mortgage at a lower interest rate. The parties are now exposed to a substantial deficiency judgment, for all or a part of which the plaintiff seeks indemnification from the defendant.
The court does not find this claim persuasive and rejects it. Although the parties did not assist each other with respect to the expenses of maintaining the dwelling, and hence were mutually self destructive, the plaintiff has been residing in the home for a substantial period of time with no rental or use and occupancy cost. Furthermore, the plaintiff's evidence as to the amount of savings available from the proposed mortgage refinance was ambiguous, and the court cannot conclude that the house could have been saved from foreclosure. Finally, it is clear that the longer she resides in the home without making the mortgage payments, which include principal, interest and real estate taxes, the greater the deficiency judgment will be.
The court also finds that although the plaintiff shows a shortfall on her financial affidavit of $239 per week, she actually has a small weekly surplus of about $17 per week, as she is not now paying the mortgage payment of $256 per week.
It also appears that when the plaintiff is required to pay for shelter, as is imminent in the light of the pending foreclosure action, she will need financial assistance to meet her expenses for a period of time until she becomes wholly self supporting.
The court also finds that the plaintiff made nonmonetary contributions during the marriage which included shopping, cooking, cleaning, and other homemaking tasks, which greatly outweighed those of the defendant; and, while the defendant's monetary contributions outweighed those of the plaintiff's, when taken together, their respective contributions, both monetary and non-monetary, are in balance.
The court has considered all of the evidence and its findings in the light of the statutory criteria embodied in General Statutes 46b-81 and 46b-82, and orders:
A decree dissolving the marriage may enter on the ground of irretrievable breakdown. CT Page 1868
The plaintiff shall have exclusive possession of the family dwelling known as 130 Brewster Road, Jewett City (Griswold) Connecticut and the defendant shall transfer to her by quit claim deed, all of his right, title and interest therein. The court specifically makes no order respecting the allocation between the parties of the encumbrances thereon.
The defendant shall pay to the plaintiff the sum of $50 per week as periodic alimony for a period of four years from the date hereof, which shall terminate upon the death of either party or the plaintiff's remarriage, or pursuant to the provisions of General Statutes 46b-86(b) and shall not be otherwise modifiable as to duration.
The defendant shall transfer by Qualified Domestic Relations Order (QDRO), or other appropriate instrument, to the plaintiff, a one-third (1/3) interest in his Intergraph Corp. deferred compensation plan shown on his financial affidavit valued as of February 15, 1994. The court shall retain jurisdiction over this transfer to ensure compliance with applicable law.
Each party shall take, have and own all personal property in his or her possession, free of the other's claims, including their motor vehicles.
The plaintiff shall have her `FERS' and `TSP" accounts free of the defendant's claims.
No attorney's fees are awarded to either party.
Teller, J.